UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| In Re: Petition of Olam Maritime Freight, PTE. LTD. : : : Petitioner, : : For Order Authorizing Discovery : Pursuant to Fed. R. Civ. P. 27 : : | Civil Action No.: 1:25-cv-03195-MJM  IN ADMIRALTY |

**MEMORANDUM OF LINVILLE LP IN OPPOSITION TO THE PETITION OF OLAM MARITIME FREIGHT FOR AN ORDER TO PRESERVE TESTIMONY AND EVIDENCE PURSUANT TO FED. R. CIV. P. 27**

Linville LP, as the owner of the M/V W-SAPPHIRE (hereafter "Owners") responds to the Petition to Preserve Testimony and Evidence filed by Olam Maritime Freight, PTE. LTD. (hereafter "Olam") on September 26, 2025. (Docket # 1).

The Court is generally familiar with the facts of this incident and the relationships between the parties from the hearing held on September 26. Owners will not belabor the record by repeating those facts but will set forth any additional relevant facts below to the extent necessary.

1. Summary of Argument

Olam's Petition under Fed. R. Civ. P. 27 should be denied in all respects. Olam has failed to satisfy the requirements of Rule 27 to show that Olam may be subject to litigation in a United States court, or that there is any adverse party who resides in this district. In fact, at least as to Owners, Olam admits that it is not entitled to Rule 27 relief. Most importantly, Olam's request for testing samples of the coal to be taken from the vessel some time in the future should be rejected because due to natural processes the methane gas emissions from the coal which may be recorded now would not be representative of the methane gas emissions which were present immediately

1

before the explosion, and the results of testing would be misleading and irrelevant. Finally, Olam has not shown any exigency that justifies immediate corporate designee depositions or production of video surveillance.

2. <u>Olam concedes it is not entitled to Rule 27 relief against Owners</u>

The only relief that Olam requests in its Petition directly from the Owners is for leave to take samples of the coal currently aboard the W-SAPPHIRE so those samples can be tested. Olam claims it should be permitted to take samples from the vessel pursuant to Fed. R. Civ. P. 27 for testing, but in the next breath concedes that it cannot rely on Rule 27 for a claim against Owners.

> Because of the arbitration provision between Vessel Owners and Olam, Olam [sic] litigation between the two in a United States court is not cognizable and thus, *Olam cannot leverage Rule 27 against Vessel Owners*.

Olam Memorandum of Law, at 11, emphasis added (Docket #1-1).

Olam is correct that it cannot claim against Owners under the US Federal Rules of Civil Procedure. The charter party between Olam and Owners which governs all claims arising out of Olam's charter or hire of the W-SAPPHIRE states that all claims between the two parties are subject to English law and that any disputes are to be referred to arbitration in London.

Olam chose to bring this Petition under Fed. R. Civ. P. 27, and that Rule is the sole basis cited by Olam in support of the relief it seeks. In deciding this Petition, this Court should limit its analysis to the theories of recovery Olam included in its Petition. Because Olam admits that this Court does not have jurisdiction under Fed. R. Civ. P. 27 to order Owners to provide samples of the coal currently aboard the vessel, that admission must be considered binding against Olam and, in and of itself, should end this inquiry at least as to Owners.

3. **Olam's Petition fails to satisfy the requirements of Rule 27 that it will be subject to <u>litigation in a US Court or that any expected adverse party resides in this District</u>**

Olam's Petition should also be denied on the merits as Olam has failed to satisfy the requirements of Fed. R. Civ. P. 27. That rule provides that "[a] person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides." Fed. R. Civ. P. 27(a)(1). This Court should deny Olam's Petition because (1) Olam does not satisfy its burden to show that it will be a party to a suit brought before a US Court, and (2) Olam does not claim, let alone provide substantive evidence, that any of the potential adverse parties resides in this District.

As to the first requirement, Olam cites *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 484–5 (4th Cir. 1999), *cert denied,* 529 U.S. 1109 (2000) for the proposition that "A petitioner does not have to demonstrate a cognizable action with absolute certainty." (Docket # 1-1, at 13); *but see, In re Skylight Shipping Corp.*, 1999 WL 1293472 *2 (Jul. 9, 1999, E.D. La.)("… the petitioner must demonstrate that it expects to be party to such an action and that it is presently unable to bring it or cause it to be brought. The allegation that the petitioner expects to be a party to an action must be *unequivocal* ...." *Wright & Miller*, § 2072 at 657.)

In order to satisfy Rule 27's requirement that the petitioner will be a party to a matter cognizable in the United States, "it must be shown that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would exist and thus is a matter that may be cognizable in the federal courts." *Dresser Indus. v. United States*, 596 F.2d 1231, 1238 (5th Cir.1979). In discussing the potential US lawsuits which it alleges could arise, Olam refers to potential London arbitrations with Owners and Mercuria, lawsuits against Javelin, CSX or Ultratech, or claims that may be brought against Olam by unidentified ships delayed due to the

3

shutdown of the navigable channel. (Docket #1-1, 13-4). Olam has not even alleged, let alone provided any supporting evidence, that any of these claims would be subject to federal jurisdiction.

Arbitrations in London under English law between Olam, Owners and Mercuria certainly do not fall within this Court's jurisdiction. Olam alleges in its Petition that Javelin is a UK corporation and Ultratech an Indian company, but Olam has not established that either company would be subject to jurisdiction in this Court for claims arising out of this incident. (Docket 1-1, at 4). The only US company identified by Olam as a potential litigant is CSX, but CSX is a Virginia company.

As to the unidentified vessels that Olam claims might bring an action in a US Court against Olam, Olam completely fails to provide any evidence that any such claims that may be brought against Olam (a Singapore company) would be subject to jurisdiction in this Court. Given that the navigation channel was only closed for a day or two at most, together with the established Supreme Court precedent that vessels which incur only economic losses without any accompanying physical injury to property they own do not have a cause of action against the party at fault for the channel closure (*Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)), the chance of any party bringing such an action against Olam, the time charterer of the W-SAPPHIRE, is extremely remote. In sum, Olam has not provided any evidence that there is a realistic possibility that it will become a party to a lawsuit brought in a US federal court.

The second requirement under Fed. R. Civ. P. 27(a)(1) is that the Petition should be filed in "the district where any expected adverse party resides." Olam's Petition notably omits any discussion whether any of the potential litigants resides in Maryland. However, given the allegations in Olam's Petition concerning the states of incorporation and principal places of business of each of the potential litigants it does identify, it is readily apparent that none of those

4

potential litigants resides in Maryland. *See, Petition of Haussler*, 10 F.R.D. 134 (E.D.N.Y.1950) (dismissing petition under Rule 27 filed in New York for deposition of a Washington DC resident because the petition was not filed where the defendant resided.)

Because Olam's Petition fails to meet its burden to show that there is a realistic possibility that Olam would be involved in litigation in a US Court with a party subject to that court's jurisdiction, or that any of the potential adverse parties resides in Maryland, Olam's Petition fails to satisfy the requirements of Fed. R. Civ. P. 27.

4. Olam has not met its burden to prove that testing samples of the coal taken long after the incident would provide material evidence because the levels of methane emissions <u>taken from coal now would not be representative of the methane levels on August 18</u>

Fed. R. Civ. P. 27 is an extraordinary remedy and is not intended to permit parties the broad scope of discovery available under the Federal Rules. While the Federal Rules generally permit discovery of all matters relevant to a party's claim or defense regardless of its potential admissibility into evidence (Fed. R. Civ. P. 26(b)(1)), courts have applied a stricter standard to applications for discovery under Rule 27, requiring that the discovery must be both material and competent. *In re Hopson Marine Transp., Inc.*, 168 F.R.D. 560, 564 (E.D. La.1996) ("Those courts that have considered the issue have all found that <u>Rule 27</u> allows for the perpetuation of evidence only when the petitioner shows that the evidence sought is material and competent.") (citations omitted).

"Rule 27 was not intended to be used as a discovery statute." *Petition of Ferkauf*, 3 F.R.D. 89, 90-91 (S.D.N.Y.1943); *Ash v. Cort*, 512 F.2d 909, 912 (3rd Cir.1975) ("Rule 27 is not a substitute for discovery"). Olam has cited *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961) for the proposition that once it is held to apply, Rule 27 should be interpreted liberally to permit a broad scope of discovery. (Docket 1-1, at 13). However, the Ninth Circuit Court of

5

#727477v1

Appeals has since rejected the holding in *Martin* that Rule 27 permits inquiry as broad as the discovery provisions of Rule 26(b). *Nevada v. O'Leary*, 63 F.3d 932, 936 (9th Cir. 1995)(holding that evidence sought under Rule 27 must be material and competent.

Most of the discovery sought by Olam here is neither material nor competent but would instead be unreliable and misleading. Most notably, Olam seeks samples of the coal presently aboard the W-SAPPHIRE and proposes to analyze those samples in an effort to determine the quality, condition, and characteristics of the coal cargo at the time it was loaded aboard the M/V W-SAPPHIRE. (Docket #1-1, at 10). The August 18 explosion in #2 hold of the W-SAPPHIRE was due to excessive and dangerous levels of methane within #2 hold. The purpose of any testing of the coal aboard the ship would be to calculate the levels of methane that were being emitted from the coal in hold #2 immediately before the explosion. In order for the results of testing of any samples of coal to be relevant or material to potential claims, it must be shown that there is a scientific basis to conclude that the test results of levels of methane emission from the coal samples taken now would be representative of the levels of methane emission from the coal at the time of the explosion.

Olam and its experts concede that the characteristics of coal change over time: "[t]he longer from the incident – the more likely the testing will be subject to challenge, or that the coal test results will produce results that do not reflect the characteristics of the coal at the time of the Incident." (*Id.*).

The unfortunate explosion on the W-SAPPHIRE occurred around 6:30 p.m. on August 18, meaning that sixty-three days will have passed as of October 20, the date of the Court's hearing. Olam's expert Grinwis states that the various elements in coal change as the main variable,

#727477v1

moisture, increases or decreases over time.[1] He adds, "[t]he longer the delay in testing, the greater the risk that the test results may not reflect the character of the coal at the time of the August explosion . ." In his declaration, Mr. Grinwis expresses a concern that the character of the coal could change within thirty days (his affidavit is dated approximately 30 days after the explosion). It will be more than sixty days since the explosion before any samples can be taken, and even longer before any testing of those samples can be performed, thereby increasing the discrepancies between the methane levels in the coal now compared to the methane levels in the coal on August 18.

Crucially, neither Mr. Grinwis nor Dr. Atherton is of the opinion that the results of testing the coal, even if it had occurred on September 26 (the date of their declarations), let alone in October or November, would be representative of the nature and characteristics of the coal at the time of the explosion. They do not express that opinion because the opposite is true.

Owners' coal expert, Martin Jonas, explains why testing of methane levels from samples taken now from the coal aboard the ship would not be representative of the methane levels emitted from the coal immediately prior to the explosion. (Martin Jonas Affidavit, attached as Exhibit A). Starting with the predicate that the nature and characteristics of coal change over time, Mr. Jonas states that because of the passage of time and material changes in the nature of the coal, and in particular the levels of methane emitted from the coal, testing of methane emissions from samples taken now would not be representative of the levels of methane that were emitted from the coal at the time of the explosion, and in fact the results of tests from samples taken now would be misleading.

---

[1] The affidavit of Dr. Atherton, Olam's other expert, makes similar observations about the changes in coal over time. (Docket # 1-3)

7

As Mr. Jonas explains, coal does not generate methane, but methane is a separate product trapped within coal as it forms underground. Coal will naturally release methane over time because methane is lighter than air and methane will escape from the coal surface and gaps within the coal. The highest levels of methane emission from the coal on the W-SAPPHIRE would be immediately after the coal was loaded because the process of loading causes fresh fracture surfaces within the coal which permits release of methane.

The coal has been sitting static within the holds of the W-SAPPHIRE since the explosion and will have lost a significant proportion of the original methane it contained at the time of loading.

Moreover, there is no standard method to test methane levels emitted from coal, nor is there a standard method to extrapolate readings taken from samples at a later date to calculate what the levels of methane emissions were at an earlier date. (Jonas Affidavit, exhibit A).

It is readily apparent that the results of testing from samples of coal taken long after the explosion would not be representative of the condition of the coal at the time of the explosion. Therefore, the results of testing such samples would likely not even meet the relevance standard of Fed. R. Civ. P. 26(b)(1), let alone the more stringent standard of discovery available under Fed. R. Civ. P. 27 that the information sought must be material and competent.

5. The SGS samples are not representative of the methane levels of the coal aboard the <u>W-SAPPHIRE on August 18</u>

Olam's Petition seeks other relief, although those requests are not directed to Owners and do not seek any action on Owners' part. Olam requests testing of (1) the SGS samples taken during the loading of the W-SAPPHIRE, and (2) the SGS samples taken during the loading of the CSSC ROTTERDAM. Olam's request to test those samples should be denied as the results would be misleading for the same reasons set forth above in connection with the request for testing the

samples of the coal still on the ship. Both sets of samples are already over a month and a half old and are no longer representative of the condition of the coal aboard the ship at the time of the explosion.

Olam and its experts also fail to provide any reason why testing of samples of coal loaded aboard the CSSC ROTTERDAM after the loading of the W-SAPPHIRE could possibly provide material and competent evidence of the methane levels being emitted from the coal aboard the W-SAPPHIRE immediately prior to the explosion.

6. <u>There is no exigency that requires taking the depositions of the CSX and Javelin corporate designees or production of the video surveillance</u>

Olam has requested depositions of corporate designees of CSX and Javelin concerning (1) the loading sequence/ventilation at the pier of W-SAPPHIRE and CSSC ROTTERDAM; and (2) knowledge as to whether the coal was blended. However, Olam's Petition makes no argument that either of these witnesses will become unavailable in the near future, a prerequisite for a Rule 27 Order. *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975)("Rule 27 applies ...to situations where, for one reason or another, testimony might be lost to a prospective litigant unless taken immediately.")

In fact, because Olam does not seek depositions of designated individuals, but rather depositions of corporate designees, there is zero risk that testimony from corporate representatives of CSX or Javelin will become unavailable. Pursuant to Fed. R. Civ. P. 30(b)(6) a corporation is required to provide a witness to testify on behalf of the corporation on certain designated topics, and if there is no such witness with personal knowledge of the issues the corporation is required to educate a witness with respect to the corporation's knowledge. *See generally Application of Checkosky*, 142 F.R.D. 4, 7-8 (D.D.C 1992)(denying depositions under Rule 27 because "[t]he sheer number of potential witnesses to the same events drastically reduces the risk that the demise of any one witness will harm petitioners' case.")

9

Olam's request for production of video surveillance of the loading of the two vessels and related documents suffers from the same deficiency – Olam does not even claim there is any reason to believe the videos and documents will not be available, let alone provide any evidence to support such a claim. Therefore, this portion of Olam's relief should also be denied for failing to show that the evidence will not be available at a later date. *Robinson v. Winslow Township*, 2010 WL 3326678, *3 (D.N.J. Aug. 23, 2010)(denying Rule 27 request for production of video surveillance because petitioners did not demonstrate that the requested tapes may become lost or unavailable).

WHEREFORE, for the reasons set forth herein, Linville LP submits that Olam Maritime Freight's Petition for discovery under Fed. R. Civ. P. 27 should be denied because Olam cannot satisfy the requirements that it will be subject to litigation in a US Court or that any expected adverse party resides in this District, because the results of testing samples taken now of the coal aboard the W-SAPPHIRE or the SGS samples would be misleading and therefore not discoverable, and because there is no exigency requiring immediate depositions or production of the video surveillance.

#727477v1

Respectfully Submitted,

**PALMER BIEZUP & HENDERSON LLP**

By: /s/
    Frank P. DeGiulio, Esq.
    Federal Bar No.: 27059
    222 Prince George Street, Suite 102
    Annapolis, MD 21401
    P (410) 267-0010
    fpd@pbh.com

    Kevin G. O'Donovan, Esq.*
    Palmer Biezup & Henderson LLP
    190 N. Independence Mall West
    Suite 401
    Philadelphia, PA 19106
    odonovan@pbh.com
    Attorneys for Linville LP

\* *Pro hac vice* application to be filed

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing Memorandum of Linville LP in Opposition to the Petition of Olam Maritime Freight for an Order to Preserve Testimony and Evidence Pursuant to Fed. R. Civ. P. 27 was served via ECF upon all counsel of record as follows:

By: /s/
Frank P. DeGiulio

Dated: October 3, 2025

#727477v1