**Gary C. Murphy**

| | |
|---|---|
| **From:** | Alexander M. Giles <agiles@tydings.com> |
| **Sent:** | Wednesday, August 27, 2025 10:31 PM |
| **To:** | Patrick Lennon; J. Stephen Simms; Gary C. Murphy; Frank DeGiulio; Kevin G. O'Donovan; Kevin Lennon; vincent.foley@hklaw.com; William.Byrne@hklaw.com |
| **Cc:** | Eduardo Prim; Beth Bradley; Simon Domin; Michael.Foster@jvln.com; Pierre Merer |
| **Subject:** | RE: MT W-SAPPHIRE - Experts Group |

Counsel-

Late this afternoon, I spent some time focusing on the "relevance" issue as it pertains to the request primarily by Mercuria and its experts (MTD) to Javelin, CSXT, and their respective experts (CMC, ABL, SGS, etc.) to permit further sampling of the cargo stockpile out at the CSXT terminal. So, this afternoon, I participated in some email correspondence with Javelin personnel and with UK counsel for Javelin, email correspondence with Eduardo Prim and Patrick Lennon, then a teleconference with Patrick Lennon, a teleconference with Vince Foley, I received and reviewed early correspondence from Steve Simms to all counsel retained (at that point in time), but prior to my retention in this matter by Javelin, and then I received and reviewed email correspondence representing a conversation with CSXT personnel from the perspective of Javelin's OPS team.

Piecing everything together, we have come to the conclusion that the cargo stockpile that currently sits at the CSXT terminal has no connection whatsoever to 1) the cargo that was loaded on the W SAPPHIRE, or 2) the cargo that was sampled and preserved by SGS as part of the loading process of the cargo and that currently resides in the three sealed bins, or 3) the cargo that was part of the sampling process that was conducted by SGS but ultimately was rejected and discarded.

Last week, on August 20, 2025, prior to my personal involvement in this case, counsel for Olam Maritime (Steve Simms) sent an email to all other counsel retained at that point in time. The most important excerpt from Steve's email, dated August 20, 2025, read as follows:

"Lee, Denis, Patrick, Matt, Martin, Yvonne, Steijn, Kevin, Frank – **Vince confirms that CSX has set aside and is holding the remaining coal from the same lot/loads that was loaded onto the M/V W-SAPPHIRE**. I told Vince we'd all confer and quickly get back with him for CSX, about further securing that coal and then getting samples for any later testing (in addition to what Lee has reported that SGS is doing) that might be needed." (emphasis added).

In discussions between my client's personnel (in particular, the Javelin OPS team) and CSXT personnel, they collectively questioned and then ultimately disagreed with the accuracy of Steve's above comment, clarifying that after the relevant cargo stockpile was sampled by SGS and those samples were preserved and packaged in three large sealed storage bins (in fact, I shared the photo of the three large sealed storage bins with my email sent earlier this morning – August 27, 2025 at 9:26 a.m. EDT), AND THEN the sampling "rejects" were discarded back into the cargo stockpile, AND THEN all of the relevant cargo was loaded into the various holds of the W SAPPHIRE. After the completion of the loading process with regard to the W SAPPHIRE, the CSXT terminal started loading the next vessel, which was the CSSC Rotterdam, and during that loading process of the CSSC Rotterdam, they completely cleared out the cargo stockpile that had been residing on the CSXT terminal after the departure of the W SAPPHIRE.

In other words, the cargo that currently (as of today, August 27, 2025) is part of the cargo stockpile out at CSXT terminal has NO relation whatsoever to the cargo that was previously loaded onto the W SAPPHIRE (or to the samples that were taken by SGS and preserved in the three large sealed storage bins).

I spoke with Vince Foley late this afternoon by telephone, and he acknowledged that it is his understanding that what Steve wrote in his August 20 email is not factually accurate, and further that it was his understanding that the cargo stockpile was completely exhausted during the loading operations of the CSSC Rotterdam, which occurred immediately after the departure of the W SAPPHIRE from the terminal's berth. Consequently, any cargo that currently resides in the cargo stockpile out at CSXT terminal does not contain any of the same cargo that was part of the cargo stockpile when the W SAPPHIRE vessel underwent loading operations.

And because we are talking about two entirely different, unrelated lots of the coal cargo at issue, Mercuria's request not only lacks any relevance from a logistical, procedural, and sampling protocol perspective, BUT it also lacks any relevance because, plain and simple, the cargo that was loaded onto the W SAPPHIRE is clearly NOT the same as the cargo that currently resides in the cargo stockpile.

Therefore, Javelin and I (as its US counsel) respectfully request that we as counsel (collectively) conclude that conducting any further sampling of the currently constituted cargo stockpile at CSXT terminal is officially and definitively not relevant (or related) to the cargo that currently resides in the holds of the W SAPPHIRE and is officially and definitively not relevant (or related) to the cargo that was previously sampled by SGS personnel and is currently stored and preserved in the three storage bins, as shown in the photo that I circulated earlier this morning. As a result, further sampling of the current cargo stockpile does not make any sense and will NEVER return any statistically relevant data pertaining to the condition of the W SAPPHIRE cargo at the time of loading.

Please confirm that all counsel are in agreement with the inevitable conclusion that any further discussions about possible further sampling of the currently constituted cargo stockpile is a waste of all of our time and effort, and, rather, we should instead spend our time focusing on the other, more important pending issues, including, but not limited to, requesting and scheduling further visits to the W SAPPHIRE involving other experts and counsel for purposes of continued investigation and documentation of the current conditions present on the vessel, in the holds, and with regard to the cargo currently onboard; requesting reasonable discovery involving deposition testimony of relevant crew members in order to preserve necessary testimony/evidence; and requesting the production of relevant vessel documentation that may impact and/or inform the investigation of this incident, among other things.

Thank you for your consideration of this position by Javelin and its undersigned counsel.

-Alex

Alexander M. Giles

agiles@tydings.com
Office: 410.752.9747

One East Pratt Street
Suite 901
Baltimore, MD 21202
Main: 410.752.9700
Fax: 410.727.5460

---

**From:** Patrick Lennon <plennon@lmplaw.net>
**Sent:** Wednesday, August 27, 2025 2:53 PM
**To:** Alexander M. Giles <agiles@tydings.com>; J. Stephen Simms <jssimms@simmsshowers.com>; Gary C. Murphy <gcmurphy@simmsshowers.com>; Frank DeGiulio <fpd@pbh.com>; Kevin G. O'Donovan <kodonovan@pbh.com>; Kevin