UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| In Re: Petition of Olam Maritime Freight, PTE. LTD. | : | Civil Action No.: 1:25-cv-03195-MJM |
| | : | |
| | : | IN ADMIRALTY |
| Petitioner, | : | |
| | : | |
| For Order Authorizing Discovery Pursuant to Fed. R. Civ. P. 27 | : | |
| | : | |

## SUPPLEMENTAL AFFIDAVIT OF DR. MARTIN JONAS

I, Dr. Martin Jonas, declare pursuant to 28 U.S.C § 1746 that I have personal knowledge of the following statements and that they are true and correct.

1.      I am over 18 years of age and competent to testify to the matters stated herein.

2.      I am one of the experts retained on behalf of Linville LP, the owner of the M/V W-SAPPHIRE, to provide advice and expert opinion in connection with the methane levels emitted from the cargo of coal loaded aboard the W-SAPPHIRE between August 16-18, 2025, at Baltimore, Maryland and with the subsequent explosion in hold #2 on August 18, 2025.

3.      I am submitting this Affidavit in response to the Declarations of Dr. John Atherton and Jack Grinwis included with the Reply by Olam Maritime Freight, PTE LTD ("Olam") for an Order to take and test samples of coal from the W-SAPPHIRE (Docket 21-1 and 21-7).

4.      Due to prior commitments, I am not available to attend the October 20 Court hearing in connection with Olam's Petition. Therefore, I provide the following written responses to the arguments made by Messrs. Atherton and Grinwis.

5.      Neither Dr. Atherton nor Mr. Grinwis disagree with the primary statement made in my original Affidavit, i.e. there is no scientific basis to conclude that the test results of levels of methane emission from the coal samples taken now would be representative of the levels of

1

methane emission from the coal at the time of the explosion. Olam's experts also do not challenge my statement that there is no scientifically recognized method whereby readings of methane levels taken today can be extrapolated to provide an accurate measure of what the methane levels were on a prior date due to the variety of factors that could influence the rates of emission of methane in the interim.

6.      I disagree with Dr. Atherton's statement that more information is needed on the composition of gases, or that the incident may have been anything other than a methane explosion. No other gas is being emitted from coal cargoes in quantities sufficient to reach explosive limits and I am aware of no instances where an explosion in holds of an ocean-going vessel carrying coal was attributed to combustion of other gases. This has also been confirmed by the analysis of the gas sample taken in the headspaces which confirms that the combustible gases in the sample were overwhelmingly methane. The findings of the testing to date have confirmed that the samples emitted methane and continue to do so and that they do not emit any other gases at any significant rate.

7.      The testing conducted to date has also confirmed that the test methods employed are unable to quantify the rate of methane emission from the cargo, e.g. in terms of grams of methane per kg of coal per hour. This is because sampling and sampling preparation itself releases the majority of any methane contained in the cargo at the time of sampling.

8.      The method used in the laboratory to capture the gas being emitted from the samples is conducted in a pressurised vessel rather than at atmospheric pressure, with no means of measuring actual pressure within the vessel. Excess pressure would greatly impede the gas emission rate from the samples.

#728230v1

9.    Dr Atherton's statement implies that we agreed on behalf of Linville LP to the protocol for testing of the SGS samples which took place at DEKRA.  On the contrary, we set out our objections in writing to the proposed test methods.   My colleague Dr Ayres did attend the testing specifically but only in order to observe on a without prejudice basis what precise methods of testing were performed.

10.    If any samples taken prior to or during transshipment are tested using the methods used for testing the gas samples, the results are liable to be misleading as to the properties and hazards of the cargo at the time of the incident, or at the time of transshipment.

11.    My opinion remains that, to a reasonable degree of scientific certainty, the results of any testing for levels of methane emission from samples taken in October 2025 or thereafter from the coal cargo on the W-SAPPHIRE would not be representative of the levels of methane emission that were present in hold #2 on August 18, 2025 immediately before the explosion, and that the results of testing performed now or hereafter would be misleading and irrelevant to the issues involved here.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 17 October 2025.

Dr. Martin Jonas

3

#728230v1